## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.:

FLORIDA STATE LODGE
FRATERNAL ORDER OF POLICE, INC.,
a Florida Not For Profit Corporation, and
JOEL CUAREZMA, individually,

Petitioners,

v.

CITY OF PEMBROKE PINES,
FLORIDA, a Florida Municipality, and
CHIEF JOSE J. VARGAS, in
his official capacity,

Respondent.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

COME NOW the Petitioners, FLORIDA STATE LODGE FRATERNAL ORDER OF POLICE, INC., and JOEL CUAREZMA, and hereby file this VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, seeking a ruling on whether the CITY OF PEMBROKE PINES, FLORIDA and CHIEF JOSE J. VARGAS can compel CUAREZMA to disclose certain communications on his personal cell phone between CUAREZMA and his FOP labor representative.

As grounds, Petitioners state:

JURISIDCTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the laws and Constitution of the United States. As such, jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1331and 1367. The Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. § 2201, et seq.,

and Federal Rule of Civil Procedure 65. The Court has authority to award attorneys' fees under 42 U.S.C. § 1988(b).

2. All acts or omissions complained of herein occurred or were omitted in Broward County, Florida. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

<u>PARTIES</u>

3.      Petitioner, FLORIDA STATE LODGE FRATERNAL ORDER OF POLICE, INC. ("FOP"), is an employee organization pursuant to § 447.203(11), Fla. Stat., and at all times material hereto was, and is, the certified bargaining agent of law enforcement personnel employed by the City of Pembroke Pines, Florida. All members of the FOP are law enforcement officers, as defined by § 112.531(1), Fla. Stat., and § 943.10, Fla. Stat.

4.      As a labor organization, the FOP has standing to represent the rights and bring suit on behalf of its members. *See Warth v. Seldin*, 422 U.S. 490 (1975); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 277 (1986).

5.      JOEL CUAREZMA ("Cuarezma") is a law enforcement officer in the rank of sergeant at the Pembroke Pines Police Department, and at all times material hereto, a member of the FOP.

6.      Scott Kushi ("Kushi") is a law enforcement officer at the Pembroke Pines Police Department and the duly elected President of the local FOP lodge, Fraternal Order of Police, Pembroke Pines Lodge No. 197.

7.      Respondent, CITY OF PEMBROKE PINES, FLORIDA ("City"), is a political subdivision and a unit of local government of the State of Florida, duly created

and existing pursuant to Article VIII, Section 2 of the Constitution of the State of Florida, and situated within the geographic jurisdiction of this Court.

8.      The Pembroke Pines Police Department ("PPPD") is a constituent agency of the City, and is a public employer pursuant to § 447.203(2), Fla. Stat.

9.      CHIEF JOSE J. VARGAS is the Chief of the PPPD.

<u>FACTUAL ALLEGATIONS</u>

10.      Cuarezma serves the City as a law enforcement Sergeant assigned to the Bicycle Patrol Team.

11.      In the beginning of June 2025, there was as staffing shortage created on Charlie Shift Team 6 due to personnel being assigned to a training school. The unit Captain, Adam Feiner ("Feiner"), verbally approved the scheduled posting pending final confirmation from the host agency. After Cuarezma received confirmation from the host agency, he notified Feiner who ordered him to solicit volunteers to immediately assist. By doing so, Feiner advised Cuarezma that Feiner would have justification when requesting overtime from Feiner's supervisor.

12.      On Thursday June 5, 2025, Cuarezma sent an email to other employees of the PPPD asking for volunteers to change work shifts.

13.      After the email was sent, Kushi sent Cuarezma a text message regarding the solicitation of volunteers under the collective bargaining agreement ("CBA"). After exchanging texts, Kushi and Cuarezma discussed the intent of the CBA regarding shift changes as memorialized in the agreement.

14.     The content of the text messages and conversation between Cuarezma and Kushi was entirely concerned with labor relations and consisted of Kushi providing Cuarezma guidance and clarification – which Cuarezma sought – on interpretation of the CBA and labor related issues.

15.     The text messages were sent from Kushi's personal cell phone to Cuarezma's personal cell phone, while both were off duty.

16.     The City does not pay for, or reimburse, Kushi or Cuarezma for their personal cell phone fees.

17.     Cuarezma thereafter shared the information he learned regarding the CBA with Feiner and advised him that he was going to recall the email to avoid a violation of the CBA. Feiner ordered Cuarezma to leave the email as sent and that he would handle the matter himself. Cuarezma believed the solicitation violated the terms of the CBA, so on Monday, June 9, 2025, Cuarezma sent an email notifying members of the agency to "disregard" after learning that the school request was denied.

18.     Feiner disagreed with the interpretation of the collective bargaining agreement, and through city email, asked Cuarezma for copies of the text messages between Cuarezma and Kushi. Cuarezma respectfully declined to provide the Captain with those text messages.

19.     On June 11, 2025, Cuarezma received a notice from PPPD Internal Affairs Sergeant Robert Sorensen ("Sorensen") that he was the subject of an internal investigation regarding the emails referenced above. Sorensen ordered Cuarezma to preserve "any correspondence" between him, Feiner, and Kushi.

20.    On July 9, 2025, Sorensen notified Cuarezma he was now considered a witness in the same investigation, and once again ordered him to preserve the communications between him and Kushi.

21.    On July 24, 2025, Sorensen sent the following email to Cuarezma:

> Sergeant Joel Cuarezma,
>
> Per Florida Public Records Law (Chapter 119), you are instructed to provide any and all documents, including but not limited to texts, emails, notes, or anything else in writing related to the Bicycle Patrol School request for volunteers that occurred between Captain A. Feiner, Detective S. Kushi, and yourself, Sergeant J. Cuarezma. This information shall be submitted to the Internal Affairs office no later than Thursday, July 31st, 2025, at 1700 hrs.

22.    On that same date, July 24, 2025, Sergeant Thomas Trabue ("Trabue"), a member of the Pembroke Pines FOP Lodge 197 Executive Board, sent Sorensen an email asking for the public records request so that they could evaluate it, as the communications do not fall under the definition of a public record. Trabue further asked for the authority under which the City could compel Cuarezma to disclose his communications with the local lodge President.

23.    On July 29, 2025, Sorensen responded to Trabue and stated that the text messages "are absolutely not 'private messages,'" and threatened that "the failure of Sergeant Cuarezma, to produce these documents will be directly contrary to an official order and subject to the penalties listed in Section 119.10, Florida Statutes."

24.    Sorensen listed a public records request number – GovQA #W133369-072925. The last digits of the request number indicate the request was created July 29, 2025 – after Trabue inquired about the public records request.

25.     The Florida Statute that Sorensen referenced, § 119.10, Fla. Stat., provides for criminal penalties for willfully and knowingly violating the provisions of Chapter 119.

26.     As of the date of the filing of this Complaint, the PPPD has threatened Cuarezma with discipline for insubordination or arrest if he fails to disclose the text messages between him and Kushi by August 6, 2025.

## COUNT I – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF FOR VIOLATION OF THE FOURTH AMENDMENT

27.     Paragraphs 1 – 26 are hereby incorporated by reference and re-alleged as if set forth fully herein.

28.     Cuarezma has a Constitutional right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

29.     Cuarezma also has a Constitutional right to be free from retaliation for exercising his Constitutional rights.

30.     At the time Cuarezma was ordered to submit to a search of his personal cell phone records, Respondents were unable to establish reasonable suspicion for the search.

31.     After Cuarezma's refusal to waive his Fourth Amendment rights, Respondents retaliated against Cuarezma by intentionally or recklessly threatening to arrest him or discipline him for insubordination.

32.     The conduct of the Respondents and their agents violated Cuarezma's rights to be free from unreasonable searches and seizures and to be free from retaliation for the exercise of his constitutional rights.

33.     As a proximate result of the unlawful conduct of the Respondents and their agents, Cuarezma suffered and will continue to suffer harm in the form of a continued Fourth Amendment violation, as well as potential monetary damages in the form of lost time and wages if he is arrested or disciplined for insubordination.

34.     A district court may grant a preliminary injunction, "if the moving party shows that: 1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014).

35.     Petitioners have a strong likelihood of success on the merits as Cuarezma has a reasonable expectation of privacy under the Fourth Amendment in the contents of his private and personal cell phone, and the City's public records request is nothing more than pretext to circumvent protections Cuarezma enjoys under the Fourth Amendment.

36.     The afore-described injury to Cuarezma will be immediate and irreparable as violations of the Fourth Amendment are presumptively irreparable.

37.     The balance of hardship weighs heavily in favor of the Petitioners. Waiting until this Court determines whether Cuarezma must disclose his confidential communications between him and Kushi will neither prejudice the City nor interfere with any of the PPPD's operations.

38.     Petitioners have no adequate remedy at law.

**WHEREFORE**, Petitioners respectfully request this Court:

(a)     Issue a preliminary injunction, enjoining the City from proceeding with an Internal Affairs investigation, discipline or criminal investigation of Cuarezma pending a determination on the merits;

(b)     Grant the Petitioners' request for permanent injunctive relief;

(c)     Order payment by Respondents of Petitioners' attorney's fees and costs; and,

(d)     For such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

**PAUL DARAGJATI PLC**

 */s/ Paul Daragjati*
PAUL A. DARAGJATI, ESQ.
Florida Bar No. 713813
Georgia Bar No. 491830
paul@daragjatilaw.com
ROSE DARAGJATI SZIKSZAY,
ESQ.  Florida Bar No. 1025106
rose@daragjatilaw.com
4745 Sutton Park Ct., Ste. 503
Jacksonville, FL 32224
Telephone:    (904) 379-4117
Fax:             (904) 379-7108
*Counsel for Petitioners*